## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| VINCENT DANG, *Individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>AMARIN CORPORATION PLC, *et al.*,<br><br>Defendants. | Civ. No. 21-19212 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |
| TODD DORFMAN, *Individually and on Behalf of All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>AMARIN CORPORATION PLC, *et al.*,<br><br>Defendants. | Civ. No. 21-19911 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

CASTNER, District Judge

**THIS MATTER** comes before the Court upon the Motions to Consolidate Related Actions, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Counsel, filed in *Vincent Dang, Individually and on Behalf of All Others Similarly Situated v. Amarin Corporation PLC, et al.* (Civ. No. 21-19212) (the "Dang Action") by 1199 SEIU Health Care Employees Pension Fund (the "Pension Fund") (ECF No. 15); Dennis and Kimberly Franks, Raymond J. Kosmider, Igor Priven, and Karèn Avanesov (collectively, the "Amarin Group") (ECF No. 16); Pawel Terlecki ("Terlecki") (ECF No. 17); and Vincent Dang ("Dang") (ECF No. 18);

1

and the Motion to Consolidate Related Actions, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Counsel, filed in *Todd Dorfman, Individually and on Behalf of All Others Similarly Situated v. Amarin Corporation PLC, et al.* (Civ. No. 21-19911) (the "Dorfman Action") by the Pension Fund (ECF No. 12) (collectively, "the Motions"), pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a). The Court has decided the Motions based on the written submissions and oral argument held on October 20, 2022.[1]  For the reasons stated herein, the Pension Fund's Motion is **GRANTED**, and the Amarin Group's, Dang's, and Terlecki's Motions are **DENIED**.

I.     **BACKGROUND**

This matter involves two putative class actions consisting of individuals and entities who acquired securities from Defendant Amarin Corporation PLC ("Amarin" or the "Company") between December 5, 2018 and June 21, 2021 (the "Class Period").  (Dang Action, Compl. ¶ 1, ECF No. 1; Dorfman Action, Compl. ¶ 1, ECF No. 1.)  Amarin is a biopharmaceutical company whose lead product is Vascepa® (AMR-101) ("Vascepa"), a prescription grade ultra-pure omega-3 fatty acid derived from fish oil.  (Dang Action, Compl. ¶ 2; Dorfman Action, Compl. ¶ 2.) Defendant John F. Thero ("Thero") was Amarin's President and Chief Executive Officer ("CEO") during the Class Period.  (Dang Action, Compl. ¶ 28; Dorfman Action, Compl. ¶ 28.)  Defendant Michael W. Kalb ("Kalb") was Amarin's Senior Vice President ("SVP") and Chief Financial Officer ("CFO").  (Dang Action, Compl. ¶ 29; Dorfman Action, Compl. ¶ 29.)  Both Complaints allege that Amarin, Thero, and Kalb (collectively, "Defendants") violated the Securities Exchange Act of 1934 (the "Exchange Act") based on Amarin's dissemination of material misstatements or omissions about the status of ongoing Abbreviated New Drug Application ("ANDA") litigation

---

[1] Representatives of the Pension Fund, the Amarin Group, and Dang participated at oral argument.

challenging the validity of Vascepa's patents. (Dang Action, Compl. ¶¶ 117–127; Dorfman Action, Compl. ¶¶ 117–127.)

The Complaints allege that, during the Class Period and despite negative outcomes for Amarin in the ANDA litigation, Defendants continued to assure investors of Vascepa's viability. (*See* Dang Action, Compl. ¶¶ 60–89; Dorfman Action, Compl. ¶¶ 60–89.) These assurances caused Amarin's share prices to remain artificially high until the investors learned the truth about the ANDA litigation, causing share prices to decline and the Class members to suffer significant losses. (Dang Action, Compl. ¶¶ 21, 108, 109; Dorfman Action, Compl. ¶¶ 21, 108, 109.)

Dang and Todd Dorfman filed the Class Action Complaints on October 21 and November 10, 2021, respectively. (Dang Action, Compl. ¶¶ 117–127; Dorfman Action, Compl. ¶¶ 117–127.) The PSLRA requires that notice be published in the first-filed action informing putative class members of their right to seek appointment as lead plaintiff within sixty days of such notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). On October 25, 2021, Dang published a notice of the action on *Business Wire*, a national, business-oriented newswire service. (*See* Dang Action, Decl. of Christopher A. Seeger in Supp. of the Pension Fund's Mot. ("Seeger Decl.") Ex. A, ECF No. 15-3; Decl. of Adam M. Apton in Supp. of the Amarin Group's Mot. ("Apton Decl.") Ex. C; Decl. of Thomas H. Przybylowski in Supp. of Terlecki's Mot. ("Przybylowski Decl.") Ex. B; Decl. of Edward Y. Kroub in Supp. of Dang's Mot. ("Kroub Decl.") Ex. B.) The notice required that any class member seeking appointment as lead plaintiff must move before the court no later than December 23, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

On December 23, 2021, the Pension Fund, the Amarin Group, Terlecki, and Dang filed Motions. (Dang Action, ECF Nos. 15, 16, 17, 18; Dorfman Action, ECF No. 12.) The Pension Fund is an institutional investor. (*See* Dang Action, Pension Fund Cert., Seeger Decl. Ex. B, ECF

No. 15-4.)  The Amarin Group is a group of five individuals, Dennis and Kimberly Franks ("D. Franks" and "K. Franks"), Raymond J. Kosmider ("Kosmider"), Igor Priven ("Priven"), and Karèn Avanesov ("Avanesov"), who invested in Amarin stock during the Class Period and suffered losses. (Dang Action, Joint Decl. of the Amarin Group ("J. Decl.") ¶¶ 1, 5, Apton Decl. Ex. D, ECF No. 16-6.)  Dang and Terlecki are both individual investors.  (Terlecki Decl. ¶¶ 1–2, Przybylowski Decl. Ex. D, ECF No. 17-3; Dang Decl. ¶¶ 1–3, Kroub Decl. Ex. C, ECF No. 18-5.)

On January 4, 2022, Terlecki filed a Notice of Non-Opposition, stating that he does not have the largest financial interest in the Class and does not oppose the competing motions.  (Dang Action, Terlecki Notice Non-Opp'n 1, ECF No. 19.)  On January 4, 2022, Dang filed a Notice of Non-Opposition to the Pension Fund's Motion, stating that the Pension Fund appears to have the largest financial interest.  (Dang Action, Dang Notice Non-Opp'n 2, ECF No. 21.)  Dang also requested that the Court appoint him as lead or co-lead plaintiff if the Court has concerns about the Pension Fund's adequacy to serve as lead plaintiff, *e.g.*, "if the Court has concerns about standing because the Pension Fund sold the last of its Amarin shares in the middle of the Class Period, on October 20, 2020." (*Id.* at 3.)

On January 4, 2022, both the Amarin Group and the Pension Fund filed oppositions to the competing motions for appointment as lead plaintiff. (Dang Action, ECF Nos. 22, 23.)  On January 11, both the Amarin Group and the Pension Fund filed replies. (Dang Action, ECF Nos. 24, 25.) The Motions are presently before the Court.

II.    **DISCUSSION**

A.    **Motions to Consolidate Cases**

Under the PSLRA, a court must determine whether to consolidate related actions before appointing lead plaintiff and approving lead counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Under

4

Federal Rule of Civil Procedure ("Rule") 42(a), a court may consolidate actions "[i]f actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). "In securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Garcia v. Intelligroup, Inc.*, Civ. No. 04-4980, 2005 WL 6074922, at *2 (D.N.J. Aug. 10, 2005) (quotations omitted) (consolidating actions "filed pursuant to various provisions of the federal securities laws, . . . [that] name[d] the same or similar defendants," and that were "brought by investors who were allegedly injured by purchasing or otherwise acquiring [Defendant company's] securities during the same or similar Class Period"); *City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp.*, Civ. No. 18-4772, 2018 WL 4629570, at *1 (D.N.J. Sept. 26, 2018) (consolidating cases that "rel[ied] on the same public statements and reports regarding [Defendant Company's] [] products, name[d] similar defendants, and assert[ed] claims arising out of § 10(b) . . . and § 20(a) of the [Exchange] Act").

Similarly here, the Complaints in the Dang and Dorfman Actions involve the same defendants, Amarin, Thero, and Kalb. (Dang Action, Compl. ¶¶ 27–29; Dorfman Action, Compl. ¶¶ 27–29.) Both Complaints allege violations under Sections 10(b) and 20(a) of the Exchange Act based on Defendants' statements and omissions regarding the ANDA litigation related to Vascepa. (Dang Action, Compl. ¶¶ 1, 3–7, 60–89; Dorfman Action, Compl. ¶¶ 1, 3–7, 60–89.) Both Complaints were brought by Amarin investors alleging injuries based on their purchasing Amarin securities at "artificially inflated prices" during the same Class Period, causing them to suffer significant losses when prices declined. (Dang Action, Compl. ¶¶ 1, 109; Dorfman Action, Compl. ¶¶ 1, 109.)

Further, all of the movants requested consolidation and there is no opposition. (Dang

Action, Pension Fund Moving Br. 4–5, ECF No. 15-1; Amarin Group Moving Br. 6–7, ECF No. 16-1; Terlecki Moving Br. 8–9, ECF No. 17-2; Dang Moving Br. 8–9, ECF No. 18-1.) Defendants have not indicated that consolidation would prejudice them. Thus, to promote "efficiency and avoid unnecessary costs or delay," the Court grants the Motions to consolidate the Dang and Dorfman Actions.[2] *See Celgene*, 2018 WL 4629570, at *1.

**B.  Motions to Appoint Lead Plaintiff**

1.  *Presumptive Lead Plaintiff*

The PSLRA requires the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA "establishes a two-step process for appointing a lead plaintiff: the court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (citing 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) & (II)). The "presumptive lead plaintiff" is

the person or group of persons that—

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

A putative class member may rebut this presumption by providing proof that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the

---

[2] The remaining citations to the CM/ECF refer to the Dang Action unless specified otherwise.

class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Lawless v. Aurora Cannabis Inc.*, Civ. No. 20-13819, 2021 WL 2850451, at *1 (D.N.J. July 8, 2021).

Here, all movants timely filed their Motions and thus, have met the first requirement for the presumptive lead plaintiff. (*See* ECF Nos. 15, 16, 17, 18.)

### a.   Largest Financial Interest

Next, the Court must determine which movant has the largest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). As explained by the Third Circuit, there is no formula for courts to follow in making this assessment, but courts should consider, among other things: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Cendant*, 264 F.3d at 262. "The third factor, 'approximate losses suffered,' is often considered the most important." *Lawless*, 2021 WL 2850451, at *2 (quoting *Stires v. Eco Sci. Sols., Inc.*, Civ. No. 18-2293, 2018 U.S. Dist. LEXIS 25088, at *9 (D.N.J. Feb. 13, 2018)). "The Third Circuit has concluded that 'largest financial interest' means the largest loss." *Roby v. Ocean Power Techs.*, Civ. No. 14-33799, 2015 U.S. Dist. LEXIS 42388, at *13–14 (D.N.J. Mar. 17, 2015) (citing *Cendant*, 264 F.3d at 223, 262).

Here, the parties do not dispute that the Amarin Group has the largest financial interest of the movants when aggregating the losses of its individual members, and that the Pension Fund has the second highest financial interest. (Pension Fund Opp'n Br. 3, ECF No. 22; Amarin Group Opp'n Br. 7, ECF No. 23; Terlecki Notice Non-Opp'n 1; Dang Notice Non-Opp'n 2.) Courts in this district have recognized the aggregation of individual financial interests of members of an investor group to amount to the "largest financial interest" under the PSLRA. *See, e.g.*, *Stires*,

2018 U.S. Dist. LEXIS 25088, at *9–10 (noting that a group movant that "collectively lost" more during the class period had the "largest financial interest" of the class). Thus, the Amarin Group has the largest financial interest of the movants, followed by the Pension Fund.

b.    Typicality and Adequacy

Once the Court determines the movant with the largest financial interest, it determines whether that movant "otherwise satisfies the requirements of Rule 23," 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc), which refers to the "typicality" and "adequacy" requirements of Rule 23(a), *Cendant*, 264 F.3d at 263. The movant need only make a "*prima facie* showing of typicality and adequacy." *Id.* at 263–64. This inquiry "should be a product of the court's independent judgment." *Id.* at 263. "In making this 'independent judgment' based on 'traditional Rule 23 principles,' the Court 'may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.'" *Lawless*, 2021 WL 2850451, at *3 (quoting *Cendant*, 264 F.3d at 263–64)). The court's analysis at this stage "need not be extensive;" the court should determine typicality and adequacy "without the aid of any other parties." *In re Enzymotec Ltd. Sec. Litig.*, Civ. No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *5 (D.N.J. Mar. 3, 2015) (citing *Cendant*, 264 F.3d at 263–64).

Here, the parties do not dispute that the Amarin Group's claims are typical of the rest of the class. (*See generally* Pension Fund Opp'n Br.; Dang Notice Non-Opp'n; Terlecki Notice Non-Opp'n.)[3] The Amarin Group asserts that its members "purchased Amarin securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading

---

[3] In looking at the typicality requirement, a court should determine whether the movant's claims "are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)) (citing *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996)) (internal quotation marks and alterations omitted).

statements and [were] damaged thereby." (Amarin Group Moving Br. 13; J. Decl. ¶¶ 5–11.) There is no indication that the Amarin Group's claims or legal theory are "markedly different" from those of the rest of the class. *See Cendant*, 264 F.3d at 265; (*see also* Compl. ¶¶ 117–127 (alleging damages based on investors' purchasing securities at artificially high prices based on material misrepresentations or omissions).) Thus, the Court agrees that the Amarin Group has met the *prima facie* showing for typicality.

"In assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider whether it 'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Cendant*, 264 F.3d at 265 (quoting *Hassine*, 846 F.2d at 179); *see also Georgine*, 83 F.3d at 630 (noting that "the interests of the named plaintiffs must be sufficiently aligned with those of the absentees" and "class counsel must be qualified and must serve the interests of the *entire* class") (emphasis in original); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995) (stating the same).

There are two additional factors for adequacy when considering a lead plaintiff motion in the PSLRA context: first, a court must inquire "whether the movant has demonstrated a willingness and ability to select competent class counsel and to negotiate a reasonable retainer agreement with that counsel." *Cendant*, 264 F.3d at 265 (citing *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 485 (N.D. Cal. 2001)). For example, a court might decline to appoint a lead plaintiff who selected counsel that "lacked legal experience or sophistication, intended to select as lead counsel a firm that was plainly incapable of undertaking the representation, or had negotiated a clearly unreasonable fee agreement with its chosen counsel." *Id.* at 265–66.

The second additional adequacy factor under the PSLRA is relevant where, as here, a prospective lead plaintiff comprises a group of individuals. *Id.* at 266. The PSLRA explicitly permits a "group of persons" to serve as lead plaintiff, and "contains no requirement mandating that the members of a proper group be 'related' in some manner." *Id.* (citing 15 U.S.C. §§ 78u–4(a)(3)(B)(iii)(I) & 78u–4(a)(3)(B)(i)).

However, if the court determines "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Id.* at 266. For example, if a court determines that a "movant 'group' with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id.* at 267 (citing *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307–08 (S.D.N.Y. 2001), where a court refused to appoint as lead plaintiff a group that was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'"). "Essentially, the Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement." *Chao Sun v. Han*, Civ. No. 15-703, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015).

Thus, while there is no requirement that an investor group's members be "related" in any way, a court may inquire about "the extent of the prior relationships and/or connection between the members of a movant group" to the extent that this sheds light on the adequacy of that group as the class representative. *Cendant*, 264 F.3d at 266–67. This inquiry ensures the appointment

of a lead plaintiff that aligns with "the PSLRA's goals of 'locat[ing] a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class,' and . . . encouraging party-driven—as opposed to lawyer-driven— litigation.'" *Takata v. Riot Blockchain, Inc.*, Civ. No. 18-2293, 2018 U.S. Dist. LEXIS 189585, at *11–12 (D.N.J. Nov. 6, 2018) (alteration in original).

In assessing a group's adequacy, "[c]ourts must also inquire whether a movant group is too large to represent the class in an adequate manner. At some point, a group becomes too large for its members to operate effectively as a single unit." *Cendant*, 264 F.3d at 267. When a group is too large, "the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement." *Id.* While there is no "hard-and-fast rule" for the size of a group, the Third Circuit has instructed "a kind of 'rule of reason prevails,'" and "courts should generally presume that groups with more than five members are too large to work effectively." *Id.* (citing *Br. for the Securities and Exchange Commission as Amicus Curiae*, at 17 n.13).

There is no dispute that the Amarin Group selected competent and well-qualified counsel. (*See generally* Resume, Apton Decl. Ex. E, ECF No. 16-7.) The principal dispute of the Amarin Group's adequacy comes from the second factor, where the Court considers whether the formation or makeup of a group of individuals would preclude it from serving as lead plaintiff. *See Cendant*, 264 F.3d at 266–67. The Court finds that the Amarin Group has not established a *prima facie* case of its adequacy for the following reasons.

First, the Amarin Group is comprised of five individuals who live in different places around the United States and who do not have a relationship outside of this litigation. With the exception

11

of D. and K. Franks, a husband-wife pair, the individuals do not have a pre-existing relationship; rather, they come from different geographical and professional backgrounds. (*See* J. Decl. ¶¶ 5–10.)[4]   The individuals acknowledge that they met through counsel.   (*See id.* ¶¶ 12–13.) Specifically, the group formed after each individual contacted and retained counsel solely for the purposes of this litigation, and thereafter, "learned of each other's existence and similar willingness to litigate the claims of the Class." (*Id.* ¶ 12.)

In *Chao Sun*, the court considered a movant group of two unrelated individuals whose declaration did not explain how they met. 2015 WL 2364937, at \*4. There, the court determined, "[b]ased upon their Declarations, . . . [the two individuals] cannot work effectively to adequately represent the interests of the class as they appear to concede that the only pre-existing relationship among them is the fact that they invested in the same [company] securities." *Id.* The court further noted, "[t]he extent of the pre-existing relationship is therefore minimal and it does not appear that there is a sufficient connection to bind them together as a unit." *Id.*; *see also Stires*, 2018 U.S. Dist. LEXIS 25088, at \*14 (determining that a group of five could not be counted on to monitor counsel in a sufficient manner because its members "spann[ed] the country's geography," it filed its joint declaration after the lead plaintiff motion was filed, and it did not specify in the joint declaration how the group met) (citing *Cendant*, 264 F.3d at 267).

Similarly here, the Amarin Group's members span the country's geography and they were introduced through counsel. (*See* J. Decl. ¶¶ 12–13.) As the courts noted in *Chao Sun* and *Stires*,

---

[4] D. Franks, former "President and CEO of the Doctors Hospital of Michigan," resides in Sarasota, Florida, (*id.* ¶¶ 5–6); K. Franks, former mortgage broker in London, Ontario, also resides in Sarasota, Florida, (*id.* ¶ 7); Kosmider resides in Sylvania, Ohio and, prior to retirement, was an account manager in chemical sales, (*id.* ¶ 8); Priven owns a medical practice in Manalapan Medical Center, and resides in Marlboro, New Jersey, (*id.* ¶ 9); and Avanesov is an orthopedic spine surgeon residing in Brooklyn, New York, (*id.* ¶ 10).

this "minimal" pre-existing relationship raises concerns of the Amarin Group's ability to "monitor counsel in a sufficient manner." *See Chao Sun*, 2015 WL 2364937, at *4; *Stires*, 2018 U.S. Dist. LEXIS 25088, at *15. Here, the members of the Amarin Group met solely through counsel and have no other pre-existing relationship as a group outside of this Class Action. (*See* J. Decl. ¶¶ 12–13.) Given the PSLRA's and the *Cendant* court's emphasis on locating an individual or entity that will monitor counsel and oversee the litigation effectively, the makeup of the Amarin Group and the circumstances of its formation weigh against its appointment as lead plaintiff. *See Cendant*, 264 F.3d at 266–68.

Second, the fact that the individual financial losses of the Amarin Group's members are significantly lower than those of the other individual movants suggests that the group was formed to aggregate individual financial losses. *See id.* at 267; *Chao Sun*, 2015 WL 2364937, at *4. The members claim the following approximate financial losses during the Class Period: $112,049 (D. Franks); $310,820 (K. Franks); $898,586 (Kosmider); $1,008,844 (Priven); and $1,708,915 (Avanesov). (Amarin Group Loss Chart, Apton Decl. Ex. B, ECF No. 16-4). The Amarin Group and the Pension Fund do not dispute these losses. (*See* Pension Fund Opp'n Br. 3; Amarin Group Opp'n Br. 7.)[5]

In *Lawless*, the court considered the lead plaintiff motion of an investor group of three individuals with an aggregate loss of $230,633, and individual losses of $71,826, $97,335, and

---

[5] The financial loss of Priven calculated by Dang differs from the calculations of the Amarin Group and the Pension Fund. (*See* Dang Notice Non-Opp'n 2 (listing Igor Priven's approximate financial loss as $1,024,084.19); Pension Fund Opp'n Br. 3 (listing Priven's approximate financial loss as $1,008,844); Amarin Group Opp'n Br. 7 (listing Priven's approximate financial loss as $1,008,844.19).) This difference in amount does not affect the Court's analysis because, even if the Court accepted the higher loss calculation of $1,024,084.19, Priven's loss would still not exceed or be comparable to the losses of Dang, Terlecki, or the Pension Fund.

$61,472, where the two competing individual movants had aggregate losses of $67,937.58 and $168,307.50. 2021 WL 2850451, at *2. The court appointed the investor group, noting "[t]his is a relatively small group of three individual investors whose individual injuries are comparable to those of both [of the other individual movants]." *Id.* at *5. In *Aguilar v. Vitamin Shoppe, Inc.*, the court noted that, because one of the individuals in the movant group "standing alone" had a larger financial loss than the competing movant, this "ease[d] concerns about plaintiffs coming together solely to aggregate losses." Civ. No. 17-6454, 2018 U.S. Dist. LEXIS 69968, at *30–31 (D.N.J. Apr. 25, 2018). By contrast, in declining to appoint a movant group as lead plaintiff, the court in *Chao Sun* noted, "[o]f primary concern to this Court is the fact that without aggregation of [the group members'] losses . . . , [one individual in the group] would have suffered less losses than [the other individual movant] and would be removed from qualification as the presumptive lead plaintiff." 2015 WL 2364937, at *4.[6]

Here, the financial interests of the individuals in the Amarin Group are significantly lower than those of the other individual movants. The highest individual claimed loss in the Amarin Group is $1,708,915 (Avanesov), while the other individual movants have losses of $3,350,322 (the Pension Fund), $2,941,428 (Dang), and $2,773,706 (Terlecki). (Amarin Group Loss Chart; Pension Fund Transaction Sheet, Seeger Decl. Ex. C, ECF No. 15-5; Terlecki Loss Chart, Przybylowski Decl. Ex. A, ECF No. 17-3; Dang Loss Chart, Kroub Decl. Ex. A, ECF No. 18-3.)

---

[6] In other cases cited by the Amarin Group where courts appointed investor groups as lead plaintiffs, one of the group's individuals had the highest financial loss of the remaining movants. *See e.g.*, *Montesano*, 2020 U.S. Dist. LEXIS 65909, at *8–9 (noting that an investor group collectively lost $586,00, with the next highest individual movant having a loss of $131,391.46); (*see also* Group Movant Loss Sheet, ECF No. 8-5, *Montesano v. Eros International PLC*, Civ. No. 19-14125 (D.N.J.) (group claimed to have collectively lost over $586,000, with one group member claiming a loss of $412,726.56 and the other group member claiming a loss of $173,371.35).)

Thus, this case is unlike *Lawless*, where the movant group was "a relatively small group of three individual investors whose individual injuries [were] comparable to those of both [the other individual movants]," 2021 WL 2850451, at *5; or *Aguilar*, where one of the individuals in the group, standing alone, had the highest financial loss, 2018 U.S. Dist. LEXIS 69968, at *30–31. Rather, the financial losses of the Amarin Group compare to those in *Chao Sun* because without the aggregation of the individual interests of the Amarin Group, it would have suffered fewer losses than any other movant, and "would be removed from qualification as the presumptive lead plaintiff." *See Chao Sun*, 2015 WL 2364937, at *2, 4.[7] Thus, the aggregation of losses weighs against the Amarin Group's appointment as presumptive lead plaintiff. *See Cendant*, 264 F.3d at 267.

Third, with respect to the Amarin Group's ability to operate effectively as a single unit, the Amarin Group submitted a joint declaration, signed by the members on December 21 and 22, 2022 (the "Joint Declaration"). (*See generally* J. Decl.) The Joint Declaration states that the

---

[7] The Amarin Group asserts in its Opposition, Reply, and at oral argument that, if the Court considers the other factors to determine largest financial interest (net funds expended and net shares purchased) its member Avanesov has the largest financial interest. (*See* Amarin Group Opp'n Br. 13; Amarin Group Reply Br. 3–5, ECF No. 24 (citing *Lawless*, 2021 WL 2850451, at *2–3).) Indeed, the court in *Lawless* noted these other factors, in addition to financial loss, when determining a group had the largest financial interest. 2021 WL 2850451, at *2–3. However, the group in *Lawless* also had the "largest financial interest regardless of which factor the Court afford[ed] more weight." *Id.* at *2. By contrast, here, the Amarin Group is urging the Court to determine, at the adequacy stage of the inquiry, that Avanesov has the largest financial interest based solely on net shares purchased and net funds expended and despite the fact that other individual movants have larger claimed losses. (*See* Amarin Group Opp'n Br. 13.) The Court will not make this determination because New Jersey district courts are in accord that the "financial loss" factor weighs the heaviest, and some suggest that it is the only factor. *See, e.g.*, *Takata*, 2018 U.S. Dist. LEXIS 189585, at *8 ("The Third Circuit has concluded that 'largest financial interest' means the largest loss."); *Roby*, 2015 U.S. Dist. LEXIS 42388, at *13–14 ("The Third Circuit has concluded that 'largest financial interest' means the largest loss.")].

members of the Amarin Group "decided to work together in order to collaborate and exercise joint decision-making," and "agree to work collaboratively to represent all Amarin shareholders who suffered damages during the Class Period." (*Id.* ¶ 14.) It further avers that the members "fully expect to reach a consensus regarding litigation decisions," but "in the unlikely event that a disagreement arises, [they] agree to a weighted voting mechanism based on the claimed loss of each group member." (*Id.* ¶¶ 14, 18.) It also states that they "have implemented communication procedures to ensure that [they] can quickly communicate and make decisions on short notice." (*Id.* ¶ 20.)

According to the Joint Declaration, the Amarin Group also "communicated with one another and [their] counsel on Tuesday, December 21, 2021," two days prior to filing the lead plaintiff motion. (*See id.* ¶ 13.) In this communication, the Amarin Group discussed, among other things, a strategy for prosecuting the actions; the role of the lead plaintiff; the benefits that the class would receive from the leadership of five like-minded investors; a shared desire to achieve the best possible result; their interests in prosecuting the case collaboratively; attorney's fees; and the actions they will take to ensure zealous and efficient advocacy. (*See id.*) The Joint Declaration acknowledges the Amarin Group's fiduciary duty to provide effective representation and ensure that their selected lead counsel effectively litigates the action; and agrees to "actively manage the prosecution of the Actions including reviewing documents, having joint calls, discussing through email any developments, participating in discovery, and exercising joint decision-making to execute a strategy to maximize the recovery of the entire Class." (*Id.* ¶¶ 16, 17.) The Joint Declaration further states, if appointed lead plaintiff, the Amarin Group's "primary goal will be to ensure that the Class achieves the largest possible recovery." (*Id.* ¶ 11.)

Like the Joint Declaration here, in *Takata*, the group also averred to participating in

conference calls to discuss the strength of the claims, a strategy, the benefits of a group lead plaintiff, their shared desire to achieve the best possible result for the class, their interests in litigating the case collaboratively, and the actions they will take to ensure zealous and efficient litigation. *See Takata*, 2018 U.S. Dist. LEXIS 189585, at *15; (J. Decl. ¶ 8, ECF No. 19-6, *Takata v. Riot Blockchain, Inc.*, Civ. No. 18-2293 (D.N.J.).)[8] The joint declaration in *Takata* also averred to the investor group's plan for resolving disagreements and its general communication plans moving forward. (*See id.* ¶¶ 6–7.) There, the court rejected the group movant's appointment, noting that the declaration was "conclusory" and did not demonstrate that group's ability to monitor the case. *Takata*, 2018 U.S. Dist. LEXIS 189585, at *15; *see also Stires*, 2018 U.S. Dist. LEXIS 25088, at *13–15 (declining to appoint a movant group as lead plaintiff, despite its joint declaration averring to the group's understanding of the role of lead plaintiff, its ability to oversee the litigation, its pre-litigation "communication," and its selection of competent counsel, because the lack of prior relationship of members made it so the group could not be counted on to monitor counsel); (J. Decl. ¶¶ 9–10, ECF No. 10-1, *Stires v. Eco Science Solutions, Inc.*, Civ. No. 17-3707 (D.N.J)); *cf. Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, Civ. No. 00-2605, 2000 WL 33173017, at *5 (D.N.J. Nov. 16, 2000) (appointing a group of institutional investors that provided declarations describing "past and continued meetings between the institutional investors and counsel, the institutional investors' involvement in the litigation thus far, and the fact that the investors chose outside counsel (not vice versa)").

   This Court joins the courts in *Takata* and *Stires* in determining that the Joint Declaration's

---

[8] The *Takata* decision dealt with two movant groups. The movant group to which the Court refers is the "Klapper Movants," which, similarly to the Amarin Group, timely submitted its joint declaration. *See Takata*, 2018 U.S. Dist. LEXIS 189585, at *15. The other group in *Takata* submitted its declaration late. *See id.* at *14–15.

language regarding the Amarin Group's single communication and plans to oversee the litigation does not allay the Court's concerns about the ability of this group to effectively monitor and manage the litigation, particularly if a dispute were to arise, where the members do not have a pre-existing relationship and acknowledge that they met through counsel for purposes of this litigation. (J. Decl. ¶¶ 5–10, 12–13); *see also Takata*, 2018 U.S. Dist. LEXIS 189585, at *15–16; *Stires*, 2018 U.S. Dist. LEXIS 25088, at *14–15; *see also Chao Sun*, 2015 WL 2364937, at *4.

The Amarin Group argues that the Court should appoint it based on the Joint Declaration, pointing to cases where courts have approved similar declarations. (*See* Amarin Group Opp'n Br. 10–13 & n.4; Amarin Group Reply Br. 2–6, ECF No. 24); *see also Aguilar*, 2018 U.S. Dist. LEXIS 69968, at *29–30; *Lawless*, 2021 WL 2850451, at *5; *Wilson v. Aurora Cannabis Inc.*, Civ. No. 19-20588, 2020 U.S. Dist. LEXIS 171474, at *6–7 (D.N.J. July 23, 2020); *Enzymotec*, 2015 U.S. Dist. LEXIS 25720, at *11–12; *Montesano v. Eros Int'l PLC*, Civ. No. 19-14125, 2020 U.S. Dist. LEXIS 65909, at *14–15 (D.N.J. Apr. 14, 2020).[9]

These cases are distinguishable from this case. Both groups in *Aguilar* and *Lawless* contained fewer individuals (three) than those in the Amarin Group (five). The courts in those cases noted that these groups were "too small to raise such concerns." *Aguilar*, 2018 U.S. Dist. LEXIS 69968, at *32; *see also Lawless*, 2021 WL 2850451, at *5 (noting that the group was "a relatively small group of three individual investors"). In *Aguilar*, one of the members of the movant group had the largest financial loss, *see* 2018 U.S. Dist. LEXIS 69968, at *30–31, and in *Lawless*, the court determined that the individuals in the movant group had injuries that were

---

[9] The Amarin Group also submitted supplemental authority to support this position. (*In re Paysafe Ltd. o/k/a Foley Trasmiene Acquisition Corp. II Sec. Litig.*, Civ. No. 21-10611 (S.D.N.Y. May 10, 2022), Order, ECF No. 28 (hereinafter, "*Paysafe* Order"); *Leacock v. IonQ, Inc.*, Civ. No. 22-1306 (D. Md. Sept. 19, 2022), Order, ECF No. 31-1 (hereinafter, *IonQ* Order").)

"comparable" to the competing movants, 2021 WL 2850451, at *5. As the Court notes *supra*, the individual losses of the members in the Amarin Group are not comparable to those of the other individual movants, which raises concerns about aggregation of losses to meet the financial interest requirement. In *Wilson*, the group's motion was unopposed, so the court engaged in little analysis and there were no arguments against the investor group's adequacy. *See* 2020 U.S. Dist. LEXIS 171474, at *3, *7. In *Enzymotec*, the court appointed the group after eliminating the only other movant because of its defective PSLRA certification. 2015 U.S. Dist. LEXIS 25720, at *9–10. Finally, in *Montesano*, the two individuals representing the entities in the investor group "ha[d] a pre-litigation relationship dating back to 2018," which weighed in favor of appointing the investor group. 2020 U.S. Dist. LEXIS 65909, at *14.[10] The Court notes the Third Circuit's instruction that groups of unrelated individuals may be appointed as lead plaintiff. *Cendant*, 264 F.3d at 266. However, the Court will not, as the Amarin Group suggests, determine the Amarin Group's adequacy based on the Joint Declaration alone.

Fourth, the Amarin Group's size of five individuals is on the upper-limit of what the Third

---

[10] The supplemental authority submitted by the Amarin Group is also distinguishable: In *Paysafe*, the court appointed a two-member movant group with comparable losses to the competing individual movant. (*Paysafe* Order 5–6, 16–17.) The competing individual movant was an investment advisory firm whose loss came from approximately 100 assignments of the financial interests of its clients, which were potentially revocable and posed standing issues. (*Id.* at 16–17.) In *IonQ*, the court appointed a two-member movant group, noting "there are only two of them, not seven, eight, or ten, sizes that might make the combined lead plaintiff unit too large or unwieldy to operate." (*IonQ* Order 13:1–4.) The *IonQ* court also noted, while the members of the movant group had "fewer" individual losses than the competing movants, both members "suffered six-figure losses, so they certainly have financial incentive to obtain maximum recovery." (*Id.* at 13:5–11.) In reaching its conclusion, the *IonQ* court distinguished the movant group from other "artificial" movant groups whose members did not "share a business or other relationship" or have "a relationship with each other based on factors independent of th[e] class action." (*Id.* at 11:21–25.) Unlike the court's analysis of the group in *IonQ*, this Court has noted concerns with the Amarin Group's lack of cohesion to monitor the litigation, its members' individual financial losses, and its lack of relationship outside of this litigation. Thus, neither *Paysafe* nor *IonQ* are persuasive on this point.

Circuit has deemed presumptively acceptable for a lead plaintiff group. *See id.* at 267. However, when considering its size in relation to the factors discussed above, the Amarin Group has not demonstrated its ability to "operate effectively as a single unit." *See id.*

While none of the above factors alone are dispositive of the issue, the Court has engaged in an inquiry pursuant to *Cendant*, looking to "the way in which [the Amarin Group] was formed or the manner in which it is constituted," the "extent of the prior relationships and/or connection between the members," the size of the group, and "other reasons . . . [that] could justify a court's decision that the Rule 23's adequacy of representation requirement is not satisfied." *See id.* at 266–67. Considering these factors as a whole, the Court finds the Amarin Group has not made a *prima facie* showing of its adequacy to represent the Class.

c.   <u>Rebuttable Presumption</u>

Although the Court determines that the Amarin Group did not establish a *prima facie* case of its adequacy, the Pension Fund submitted rebuttal evidence, in the form of solicitations sent by the Amarin Group's counsel as well as other potentially-related law firms, to show that the Amarin Group cannot adequately serve as lead plaintiff. (Pension Fund Opp'n 11–16; Seeger Opp'n Decl. Exs. 1, 2, ECF Nos. 22-2, 22-3.) Of the numerous solicitations submitted to the Court, only one appears to have any relation to this litigation in that it solicits Amarin shareholders and lists the Amarin Group's counsel as a "source" at the bottom of the solicitation. (*See* Pension Fund Opp'n Br. 14 n.7.)

The Court does not need to decide whether this solicitation is sufficient rebuttal evidence because, as discussed above, the Amarin Group did not establish a *prima facie* showing of adequacy under Rule 23.

20

2.     *The Pension Fund's Motion for Appointment as Lead Plaintiff*

The Court turns to the Pension Fund, which is the movant with the next highest financial interest. *See Cendant*, 264 F.3d at 268; (Pension Fund Transaction Sheet, Seeger Decl. Ex. C.) The Pension Fund timely filed its lead plaintiff motion. *See* 15 U.S.C. § 78u-4(a)(3)(A)–(B); (ECF No. 15). Additionally, the Pension Fund has asserted that its claims are "typical" of the rest of the class because it purchased securities during the Class Period at prices artificially inflated by Defendants' materially false statements or omissions. (Pension Fund Moving Br. 10.) These are the same claims raised in the *Dang* and *Dorfman* Complaints. (Dang Action, Compl. ¶¶ 117–127; Dorfman Action, Compl. ¶¶ 117–127.)

Additionally, the Pension Fund has set forth a *prima facie* case for its adequacy. Its large individual financial loss will ensure its incentive to represent the claims vigorously. *See Cendant*, 264 F.3d at 264 (discussing PSLRA legislative history opining that "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (quoting H.R. Conf. Rep. 104–327, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 737) (internal quotation marks omitted). It has also demonstrated its ability to serve as lead plaintiff and select competent counsel, based on past experience serving as lead plaintiff and selecting Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as counsel. (Pension Fund Opp'n Br. 26–27 (citing *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, Civ. No. 19-3347, 2020 WL 3396660, at *8 (S.D. Ohio June 19, 2020) (appointing the Pension Fund as lead plaintiff and Robbins Geller as lead counsel) and *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, Civ. No. 15-7658, 2021 WL 358611, at *8 (D.N.J. Feb. 1, 2021), *aff'd in part, appeal dismissed in part sub nom. TIAA v. Valeant Pharms. Int'l, Inc.*, No. 21-1218, 2021 WL 6881210 (3d Cir. Dec. 20, 2021) (approving settlement negotiated by

Robbins Geller). Moreover, the Pension Fund is a "sophisticated institutional investor." (Pension Fund Moving Br. 10.) This is the type of investor that Congress intended to serve as lead plaintiff when passing the PSLRA. *See Cendant*, 264 F.3d at 264; *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 510–11 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs."). Accordingly, the Pension Fund has set forth a *prima facie* case that it is the presumptive lead plaintiff.

The Amarin Group and Dang challenge the Pension Fund's adequacy to serve as lead plaintiff because it sold more shares than it purchased during the Class Period and thus, is a "net seller." (Amarin Group Reply Br. 5 n.1 (citing *Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007); Dang Notice Non-Opp'n 3 (citing *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (rejecting a lead plaintiff movant in part because it "would be subject to unique defenses because it retained so few shares at the end of the Class Period").)

While the Pension Fund did indeed sell its shares before the end of the Class Period, the Pension Fund still suffered net losses. (*See* Pension Fund Transaction Sheet, Seeger Decl. Ex. C.) Thus, the Pension Fund is unlike the lead plaintiff movant in *In re Bausch & Lomb Inc. Securities Litigation,* which was a "net gainer" and "profited, rather than suffered, as a result of the inflated stock prices." *See* 244 F.R.D. at 173–74.

Additionally, the Pension Fund's sale of its shares before the Class Period ended does not render it incapable of adequately protecting the interests of the Class or subject it to unique defenses because it sold its shares after two of the four alleged disclosures during the Class Period.[11] *See Christian v. BT Grp. PLC*, Civ. No. 17-497, 2017 WL 3705804, at *6–8 (D.N.J.

---

[11] Specifically, the Pension Fund sold its shares by October 20, 2020, (*see* Pension Fund Transaction Sheet, Seeger Decl. Ex. C), which was after the March 30, 2020 disclosure, when Amarin announced the district court's ruling in favor of the generic companies in the ANDA

Aug. 28, 2017) (finding that an institutional movant that sold its shares after one of two "corrective disclosures" during a class period was not subject to unique defenses because it still suffered losses as a result of the alleged misrepresentations); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115 (E.D.N.Y. 2012) (determining that, where "there [were] several plausible and legitimate partial disclosures prior to October 4, 2011 [the date of the last corrective disclosure]," the fact that some lead plaintiff movants sold their shares prior to the end of the class period did not disqualify them from appointment as lead plaintiff).[12]

Additionally, to the extent the Amarin Group argues that the Pension Fund does not have standing to serve as lead plaintiff because the Pension Fund has not traded in both options and common stock, this argument is unsupported by case law. (*See* Amarin Group Opp'n Br. 8.) On rebuttal, "the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate []' job." *Cendant*, 264 F.3d at 268. Here, the fact that another movant (the Amarin Group) has traded in both options and common stock does not demonstrate that the Pension Fund will not represent the class fairly and adequately. *See Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co.*, Civ. No. 20-2155, 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) (rejecting claimant's request to be appointed as co-lead plaintiff because he "[was] the only movant with standing to

---

litigation, (Compl. ¶¶ 8, 90–93); and the September 2, 2020 disclosure, when the Federal Circuit affirmed the district court's ruling, (*id.* ¶¶ 12–13, 96–97).

[12] Having determined that the Pension Fund is not subject to any unique defenses as a net seller, the Court denies Dang's request to be appointed as co-lead plaintiff. (*See* Dang Notice Non-Opp'n 3); *Kabak as Tr. of Stephen Kabak & Joy Schary Living Tr. v. Becton, Dickinson & Co.*, Civ. No. 20-2155, 2020 WL 3056281, at *3 (D.N.J. June 9, 2020) (rejecting an individual plaintiff's request to serve as co-lead plaintiff and noting, "[t]he fragmented lead plaintiff arrangement [the individual] proposes finds no support in the PSLRA").

assert claims stemming from options investments").

Accordingly, no party has rebutted the Pension Fund's presumptive lead plaintiff status.

**C.      Motion to Approve the Lead Plaintiff's Selection of Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). As the Court has determined the Pension Fund is the most adequate plaintiff, it now considers the Pension Fund's selection of Robbins Geller as lead counsel. Courts should "employ a deferential standard in reviewing the lead plaintiff's choices." *Cendant*, 264 F.3d at 274. This inquiry "is appropriately limited to whether the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Id.* In making this determination, courts consider:

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Id.* "[A]t bottom, the ultimate inquiry is always whether the lead plaintiff's choices were the result of a good faith selection and negotiation process." *Id.*

Here, the Pension Fund is a sophisticated institutional investor who has served as lead plaintiff and selected Robbins Geller as lead counsel in other matters. *E.g.*, *La. Sheriffs' Pension & Relief Fund*, 2020 WL 3396660, at *8. Robbins Geller currently serves or has served as lead counsel in several securities actions in this district. (*E.g.*, Order, ECF No. 67, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, Civ. No. 15-7658, (D.N.J. May 31, 2016); Order, ECF No. 20, *Hall v. Johnson & Johnson*, 18-1833, (D.N.J. Nov. 26, 2018); Order, ECF No. 42, *In re Novo Nordisk Sec. Litig.*, Civ. No. 17-209, (D.N.J. June 1, 2017) (appointing Robbins Geller alongside co-

counsel).)  In *Valeant*, Robbins Geller obtained the "ninth largest PSLRA class action ever recovered." 2021 WL 358611, at *5.

The Pension Fund also cites to Robbins Geller's success in obtaining "the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits." (Pension Fund Moving Br. 12 n.3 (citing *In re Enron Corp. Sec. Litig.*, Civ. No. 01-03624 (S.D. Tex.); *In re Cardinal Health, Inc. Sec. Litig.*, Civ. No. 04-00575 (S.D. Ohio); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, Civ. No. 02-05893 (N.D. Ill.); *In re UnitedHealth Grp. Inc. Sec. Litig.*, Civ. No. 06-01691 (D. Minn.); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, Civ. No. 01-01451 (D. Colo.); *In re HealthSouth Corp. Sec. Litig.*, Civ. No. 03-01500 (N.D. Ala.).)  The Pension Fund points to a recent case where Robbins Geller tried the case before a jury, and the jury returned a verdict in favor of the plaintiff. *HsingChing Hsu v. Puma Biotech., Inc.*, Civ. No. 15-865 (C.D. Cal).  Based on the foregoing, the Court is satisfied that the Pension Fund carefully selected Robbins Geller, and that Robbins Geller has the qualifications and experience to serve as lead counsel.  Moreover, no party has objected to the approval of Robbins Geller as counsel. Accordingly, the Court approves the Pension Fund's selection of counsel.

## III.  CONCLUSION

For the foregoing reasons, the Motion to Consolidate Related Actions, for Appointment as Lead Plaintiff, and for Approval of Lead Plaintiff's Selection of Counsel filed by the Pension Fund (ECF No. 15) is **GRANTED**, and the competing motions, filed by the Amarin Group, Dang, and Terlecki (ECF Nos. 16, 17, 18) are **DENIED**.  An appropriate Order will follow.

Date: October 27, 2022                              */s/ Georgette Castner*
                                                    **GEORGETTE CASTNER**
                                                    **United States District Judge**